IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STEPHANIE NELSON JEFFERSON**                    **PLAINTIFF**

**V.**                 **No. 4:25-CV-00347-LPR-ERE**

**SOCIAL SECURITY ADMINISTRATION,**
**COMMISSIONER**                                                 **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge Lee Rudofsky. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include a factual or legal basis, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact.

**I.**      **Background**

On September 13, 2022, Ms. Stephanie Jefferson filed an application for disability insurance benefits and supplemental security income. *Tr. 13, 244, 251*. Her claim was denied initially and upon reconsideration. On March 12, 2024, an Administrative Law Judge ("ALJ") held a telephonic hearing, where the ALJ heard testimony from Ms. Jefferson and a vocational expert ("VE"). *Tr. 32–70*. The ALJ issued a decision on May 20, 2024, finding that Ms. Jefferson was not disabled. *Tr. 13–25*. The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. *Tr. 1-3*.

1

Ms. Jefferson, who was fifty-five years old at the time of the hearing, attended some college and has past relevant work experience as an administrative clerk. *Tr. 36, 38, 61.*

## II.   The ALJ's Decision[1]

The ALJ found that Ms. Jefferson had not engaged in substantial gainful activity since her alleged onset date of January 1, 2021. *Tr. 16.* The ALJ identified the following severe impairments: diabetes mellitus, lupus, degenerative knee changes, degenerative lumbar changes, sensorineural hearing loss, and obesity. *Id.* The ALJ concluded that Ms. Jefferson did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 18–19.*

According to the ALJ, Ms. Jefferson had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; (2) occasional balancing, stooping, kneeling, crouching, and crawling; (3) frequent use

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)(4).

of upper extremities to reach, handle, finger, and feel; and (4) no work in loud or very loud noise environments. *Tr. 19–20.*

Based on the testimony of the VE, the ALJ found that Ms. Jefferson could perform her past relevant work as an administrative clerk as that work was generally performed. *Tr. 24, 63.* Accordingly, the ALJ found that Ms. Jefferson was not disabled. *Tr. 24*.

## III. Discussion

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Ms. Jefferson's Arguments for Reversal

Ms. Jefferson argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred: (1) in not including limitations in the RFC related to fatigue due to lupus; and (2) in failing to evaluate whether her lupus met or equaled Listing 14.02 at Step Three. *Doc. 9 at 2-20*. After carefully reviewing the record as a whole, I recommend affirming the Commissioner's decision.

### C. Analysis

#### 1. The RFC Is Supported by the Record

Ms. Jefferson argues that although the ALJ found lupus as a severe impairment, the ALJ failed to assign any limitations in the RFC to account for the extreme fatigue she suffered due to lupus. *Doc. 9 at 2–11*. She maintains that substantial evidence in the record documented her disabling fatigue, including medical opinions at the initial and reconsideration level that the ALJ found generally persuasive. *Doc. 9 at 3–4*; *Tr. 82, 90*. Ms. Jefferson contends that the ALJ failed to explain why he rejected her fatigue, which she maintains would impact her ability to attend work regularly and stay on task while working. *Doc. 9 at 5–11*.

Ms. Jefferson bears the burden of proving her RFC, which represents the most she can do despite the combined effects of her credible limitations. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. §§ 404.1545, 416.945(a)(1). "It is the ALJ's responsibility to determine a claimant's RFC based

on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of [her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The ALJ is required to consider all the claimant's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). The ALJ "may choose to disbelieve . . . subjective reports because there are inherent inconsistencies or other circumstances that cause the ALJ to question the reliability of the subjective reports." *Twyford v. Comm'r Soc. Sec. Admin.*, 929 F.3d 512, 517–18 (8th Cir. 2019).

Ms. Jefferson testified at the hearing that she had an "immune deficiency . . . described as lupus," suffered from joint pain, and that she had good days and bad days. *Tr. at 42–43*. Some days she "barely can get out of bed." *Tr. at 43*. She also testified that she did some cooking (mostly small meals), cleans her garage, and can

5

walk for twenty to thirty minutes. *Tr. at 45, 51–53*. She described joint pain, cramps in her legs, and stiffness as her main issues and had stopped seeing a rheumatologist. *Tr. at 49, 54*.

Medical records reflect that Ms. Jefferson saw Dr. Fabiola Gamarra-Hilburn at Houk Rheumatology on April 5, 2022. *Tr. at 825*. A joint examination revealed five tender joints, no swollen joints, normal range of motion, and normal joint stability. *Id*. Ms. Jefferson had 5/5 strength in both upper and lower extremities. *Id*. At a follow-up appointment on May 24, 2022, Ms. Jefferson had seven tender joints and two swollen joints, range of motion and joint stability were normal, and lower and upper extremity strength was 5/5. *Tr. at 821–22*. Dr. Gamarra-Hilburn started medication "despite [a] diagnosis not being confirmed." *Tr. at 821–22*. A follow-up examination on August 25, 2022, revealed one tender joint, no swollen joints, normal range of motion, normal joint stability, and 5/5 strength in upper and lower extremities. *Tr. at 817–18*.

At an August 23, 2023 appointment with her cardiologist, Ms. Jefferson reported that her "[p]reviously discussed fatigue is ongoing but stable." *Tr. at 1318–19*. On November 11, 2023, Ms. Jefferson saw Madison Burks, PA, at Arkansas Longevity Center for an annual exam. *Tr. at 1280*. Ms. Jefferson reported that she was "feeling much better" and "having more energy." *Tr. at 1284*. She reported that she had discontinued some of her lupus medication and would like to stop all the

6

medications. *Id*. She reported "continued fatigue." *Id*. On November 29, 2022, Ms. Jefferson saw Dr. Jamal Azhari at UAMS Rheumatology Clinic for a second opinion. *Tr. at 964*. Dr. Azhari ordered labs and confirmed that "[t]here is no clinical evidence of systemic lupus at this time." *Tr. at 1011–12*.

In finding that Ms. Jefferson could perform light-duty work with some postural and environmental limitations, the ALJ specifically considered Ms. Jefferson's lupus but found that her statements regarding the intensity, persistence, and limited effects of her impairment was not consistent with the medical and other evidence in the record. *Tr. at 21*. In particular, the ALJ noted that Ms. Jefferson had stopped taking her lupus medication; that her medical examinations—including joint-specific evaluations—were largely normal; that she generally had normal strength and range of motion in both the upper and lower extremities; that she was independent in her activities of daily living, including shopping in stores once a week for two to three hours and performing household chores on a daily basis; and that after subsequent testing, a second rheumatologist determined that she did not have lupus. *Tr. at 20–21*. In considering how Ms. Jefferson's obesity might cause or contribute to co-existing impairments, the ALJ noted that the record did not contain evidence establishing fatigue as a significant or ongoing symptom. *Tr. at 22*.

The ALJ acknowledged that Ms. Jefferson's treatment record overall was conservative, and her symptoms had improved with treatment. *Tr. at 23*. *Milam v.*

*Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (noting that only conservative treatment weighs against a finding of disability); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

The ALJ found the opinion of two state agency physicians, Dr. Ramona Bates and Dr. Dan Gardner, generally persuasive. *Tr. at 23–24*. Both Dr. Bates, who reviewed Ms. Jefferson's records at the initial determination and Dr. Gardner, who did so on reconsideration, found that Ms. Jefferson could perform light-duty work. *Tr. at 73, 88*. Although both physicians acknowledged Ms. Jefferson's lupus, neither articulated any limitation to account for her alleged extreme fatigue. The ALJ found these medical opinions well supported by narrative explanation and consistent with the record. *Tr. at 23–24*.

Substantial evidence in the record supports the ALJ's finding that lupus did not limit Ms. Jefferson to the degree she alleged. The ALJ considered lupus and found that Ms. Jefferson's subjective report of disabling symptoms was not entirely consistent with the record. The ALJ cited to conflicting evidence of diagnosis, effectiveness of treatment, discontinuance of lupus medication, improved symptoms, her ability to perform activities of daily living, and normal examination findings. Moreover, the ALJ crafted an RFC that included postural limitations to account for Ms. Jefferson's joint pain and stiffness. While Ms. Jefferson disagrees

with the decision of the ALJ and argues that additional limitations were necessary, this Court defers to credibility decisions that are supported by good reasons and substantial evidence. *Schwandt*, 926 F.3d at 1012 (citing *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).

### 2. The ALJ Did Not Err Regarding Listing 14.02

For her second point, Ms. Jefferson contends that the ALJ erred at Step Three by failing to evaluate whether her lupus met or medically equaled the criteria for Listing 14.02, systematic lupus erythematosus.[2] *Doc. 9 at 14–20*. Ms. Jefferson is correct that the ALJ did not explicitly mention Listing 14.02 at Step Three. However, "[t]here is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003); *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001)).

A claimant has the burden of proving that an impairment, or combination of impairments, meets or equals the criteria for a listed impairment. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment

---

[2] Ms. Jefferson also argues that it is unclear whether the agency physicians evaluated whether she met or equaled Listing 14.02. *Doc. 9 at 19*. She argues that the "agency physicians' failure to explain why Plaintiff did not meet or equal the listing, or confirm they considered the entirety of factors contained in listing 14.02 demonstrates additional reason why the ALJ could not have properly evaluated listing 14.02." *Id*. Ms. Jefferson provides no authority to support this argument.

9

must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). Ms. Jefferson acknowledges that to meet Listing 14.02, she had to demonstrate that she suffered from severe fatigue or malaise. *Doc. 9 at 14–15*; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.02. As noted earlier, the ALJ rejected Ms. Jefferson's subjective complaints of disabling fatigue, citing the second medical opinion casting doubt on her lupus diagnosis, the discontinuance of her lupus medication, improved symptoms, her ability to perform activities of daily living, and normal examination findings. The same reasoning undermines Ms. Jefferson's claim that she met the listing criteria for lupus, and I am convinced that the ALJ's overall conclusion is supported by the record.

## IV.   Conclusion

As set out above, the ALJ applied proper legal standards in evaluating Ms. Jefferson's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

Dated 2 October 2025.

_____
UNITED STATES MAGISTRATE JUDGE